Submitted on briefs May 18, affirmed July 20, petition for
rehearing denied September 9, 1977

## GARRIGUES, *Appellant,*
### *v.*
## KANTOR et ux, *Respondents.*
## (No. 75-3627, SC 24608)

566 P2d 890

George L. Garrigues, Stockton, California, filed briefs in propia persona.

William F. Frye, of Frye, Speer & Smith, Eugene, filed a brief for respondents.

HOLMAN, J.

## HOLMAN, J.

Plaintiff purchaser brought this suit for rescission of the sale of a weekly newspaper. The trial judge found for defendant sellers, who are husband and wife. Plaintiff appeals.

Defendants commenced the publication of a new weekly newspaper in western Lane County. About 19 months later they sold the paper to plaintiff, who agreed to pay $10,000 down and the balance of $20,000 in installment payments of $200 per month. Plaintiff was an assistant professor of journalism at the University of Southern California at the time he responded to defendants' advertisement; defendant Kantor was a writer. It was shown that plaintiff did not have any business experience and that such experience as defendants had was limited to that which they acquired during the venture which is the subject of this case. Plaintiff worked with defendants in publishing the paper during the month prior to the date of sale.

Ownership was transferred to plaintiff at the end of October 1974. After three weeks of publication, plaintiff tendered the paper back to defendants and sought to rescind. Publication of the paper ceased with the following week's issue. Defendants rejected the tendered rescission. The bases for rescission were three alleged misrepresentations: (1) the paper had a circulation of 3,800 paid subscribers; (2) the weekly expenses of publishing the paper were $250 to $300; (3) the average weekly display advertising revenue was between $500 and $600. There is no issue whether the statements were made; the only issues are whether they were substantially untrue and whether they were relied upon.

The representations concerning the weekly expenses and the weekly revenue from display advertising were made in a letter dated June 28, 1974, from defendant Kantor to plaintiff, which letter was accompanied by a profit and loss statement for 1973, as well

as one for the period January 1 through May 31 of 1974. These statements showed a profit of $1,135.54 for 1973, and a profit of $2,889.97 for the first five months of 1974. The statements showed the average weekly expense and the average weekly revenue from display advertising for the five-month period to have been, respectively, more and less than the amounts represented in the letter. Noting that the statement figures did not bear out the representations made in the letter, plaintiff sent an inquiry to defendants, whose response was an attempted explanation as to why the financial situation should be better in the future while as yet unreflected in the present financial documents.

■ At the time the contract was entered into, plaintiff required that the profit and loss statement for the first five months of 1974 and defendants' attempted explanation in response to his inquiry be attached to the agreement in order to demonstrate that he had relied upon them in entering into the contract. He did not require that there be attached the June 28 letter, wherein were made the two representations upon which he now depends. It has not been shown that the general statements in defendants' explanation were substantially untrue. The representations in the letter upon which plaintiff now depends were untrue; however, it is our conclusion that no one could rely upon such representations, whether made in the letter or subsequent thereto, after perusing the accompanying financial documents. In fact, plaintiff's failure to attach to the contract the letter in which the specific representations were made is an indication that he did not rely upon those representations.

The representation concerning the number of paid subscribers was shown to have been technically false but not to any substantial degree. It could be found to have been false by only 200 subscriptions, more or less. Of the paid subscriptions, however, 500 were the result of a $2,000 gift to defendants to promote the paper, $1,000 of which was used to purchase 500

yearly subscriptions at $2.00 each and sent to selected persons. The peculiar nature of these subscriptions was not disclosed to plaintiff; the issue therefore is whether this failure to disclose was such a misrepresentation as to entitle plaintiff to rescind. The trial judge held that, the representation as to the number of subscribers being literally true, plaintiff was not so entitled.

Plaintiff claims he relied upon a report to the United States Postal Service which was required of defendants in order for them to maintain their mailing permit and insisted that a copy of the report be attached to the parties' agreement at the time he signed it. This report showed an average "total paid circulation" of 3,706 and a "total paid circulation" nearest the filing date of the report of 4,062, rather than the figure of 3,800 shown in his complaint to have been the one on which he relied. In his brief, plaintiff quotes from the United States Postal Service Manual § 132.463, with which defendant had to comply in making his report. An excerpt of that quotation is as follows:

> "A minor portion of the subscription list may consist of persons whose subscriptions were paid for as gifts. Subscriptions paid for by advertisers or other interested persons to promote their own interests and subscriptions given free by the publishers are not gift subscriptions; postage at the transient rate in 132.13 must be paid on these copies."

He also quotes the following statement from *Myrick v. United States,* 219 F 1, 4 (1st Cir 1915):

> "The phrase 'a legitimate list of subscribers' evidently means a list of subscriptions taken at more than a nominal price, and the price must have been paid, or the subscriber, or some one in his behalf, be under obligation to pay the agreed price; and that subscriptions taken at a nominal price, or without price, do not answer the requirements of the statute in this particular and cannot be counted in making up a legitimate list."

These citations appear to harm plaintiff's position

rather than to help it. Gift subscriptions paid for by others are paid subscriptions.

Plaintiff also contends that a person to whom a paper is sent without his consent is not a subscriber but cites no postal regulation in this regard. Instead, plaintiff cites *Ashton v. Stoy,* 96 Iowa 197, 64 NW 804, 805 (1895), to the effect that a subscriber must be one who gives his consent. However, in issue was the definition of a "subscriber" under a section of the Iowa Code concerning newspapers eligible to publish official county reports.

■ Because plaintiff indicated he particularly relied upon the report made to the United States Postal Service regarding the number of subscriptions, the regulations concerning who is entitled to be included upon a subscription list in such a report would appear to be particularly appropriate. Plaintiff has called to our attention the above-quoted regulation 132.463 which says that "[a] minor portion of the subscription list may consist of persons whose subscriptions were paid for as gifts," which is the situation here. It says nothing about having to have the consent of the person to whom the subscription is given. No information is given to us as to what percentage constitutes a "minor portion" and we cannot say, as a matter of law, that 500 out of the number here is not a minor portion.

■ Plaintiff also points out that a considerable number of the requests for subscriptions came to defendants with no money enclosed, and that these subscriptions were from persons who had filled out and mailed a printed request form for a subscription which the paper had published. He claims these were not legitimate subscriptions. There is no copy of the request form in evidence. However, defendants treated a completed request form as a promise to pay for the subscription and plaintiff has not produced proof that it was improper to treat it so.

The decree of the trial court is affirmed.